## IN THE UNITED STATES COURT
## OF FEDERAL CLAIMS

UNITED AFFILIATES CORP. and
MINGO LOGAN COAL LLC,

*Plaintiffs*,

v.

UNITED STATES OF AMERICA,

*Defendant*.

No. 1:17-cv-00067
Hon. Edward H. Meyers
**Electronically Filed on May 14, 2026**

### PLAINTIFFS UNITED AFFILIATES CORP AND MINGO LOGAN COAL LLC'S
### RENEWED MOTION FOR STAY

**TABLE OF CONTENTS**

**Page**

I.   LEGAL STANDARD ....................................................................................................1

II.  ARGUMENT...............................................................................................................2

   A.  HOLDING THE UNITED STATES' SUMMARY JUDGMENT MOTION IN
      ABEYANCE IS AN APPROPRIATE REMEDY............................................... 3

   B.  EXPERT DISCOVERY IS NECESSARY TO RESOLVE THE
      ISSUES IN THIS CASE. ...................................................................................... 4

     1.  SUMMARY JUDGMENT IN A TAKINGS CASE IS PREMATURE PRIOR TO
        EXPERT DISCOVERY. ............................................................................. 4

     2.  EXPERT DISCOVERY IS NECESSARY FOR MANY ISSUES RAISED BY THE
        UNITED STATES IN ITS SUMMARY JUDGMENT MOTION. .............................. 5

   C.  PLAINTIFFS WOULD BE PREJUDICED IF REQUIRED TO FILE OPPOSITION
      BRIEFING PRIOR TO EXPERT DISCOVERY. ............................................ 10

   D.  BRIEFING AND DECIDING THE UNITED STATES' SUMMARY JUDGMENT
      MOTION WOULD RESULT IN UNNECESSARY TIME AND EXPENSE. ............... 11

III. CONCLUSION...........................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Anaheim Gardens v. United States*,
178 Fed. Cl. 155 (2025) .................................................................................................4

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................2

*Appolo Fuels, Inc. v. United States*,
54 Fed. Cl. 717 (2002) ...................................................................................................6

*Appolo Fuels v. United States*,
381 F.3d 1338 (Fed. Cir. 2004).......................................................................................6

*Baron Services, Inc. v. Media Weather Innovations, LLC*,
717 F.3d 907 (Fed. Cir. 2013)......................................................................................2, 4

*Braswell v. United States*,
155 Fed. Cl. 148 (2021) .................................................................................................11

*Burnside-Ott Aviation Training Ctr., Inc. v. United States*,
985 F.2d 1574 (Fed. Cir. 1993)......................................................................................2

*Cane Tennessee, Inc. v. United States*,
62 Fed. Cl. 703 (2004) ...................................................................................................9

*Cherokee Nation of Oklahoma v. U.S.*,
124 F.3d 1413, 1416 (1997)............................................................................................2

*Cienega Gardens v. United States*,
503 F.3d 1266 (2007)....................................................................................................7, 9

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ..........................................................................................1

*Commonwealth Edison Co. v. United States*,
271 F.3d 1327 (Fed. Cir. 2001)......................................................................................7

*Didley v. United States*,
173 Fed. Cl. 170 (2024) .................................................................................................2

*Extreme Coatings, Inc. v. United States*,
No. 11-895C, 2012 WL 4747248 (Fed. Cl. Oct. 3, 2012) ........................................................2

*Favors v. City of Atlanta*,
849 F. App'x 813 (11th Cir. 2021) .......................................................................................2

*Groves v. McDonough*,
34 F.4th 1074 (Fed. Cir. 2022) ............................................................................................1

*Kaiser Aetna v. United States*,
444 U.S. 164 (1979) ..............................................................................................................8

*Keystone Bituminous Coal Association v. DeBenedictis*,
480 U.S. 470 (1987) ..............................................................................................................9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ..............................................................................................................1

*Lippmann v. United States*,
127 Fed. Cl. 238 (2016) .....................................................................................................2, 3

*McElroy Coal Company v. Schoene*,
240 W. Va. 475 (2018) ..........................................................................................................5

*Metropolitan Life Insurance Co. v. Bancorp Services, LLC*,
527 F.3d 1330 (Fed. Cir. 2008)............................................................................................4

*Murr v. Wisconsin*,
582 U.S. 383 (2017)...............................................................................................................9

*Newman v. City of Philadelphia*,
509 F. Supp. 3d 291 (E.D. Pa. 2020) ...................................................................................3

*Phillips v. Fox*,
193 W.Va. 657 (1995) ...........................................................................................................6

*Rose Acre Farms, Inc. v. United States*,
559 F.3d 1260 (Fed. Cir. 2009).............................................................................................7

*Store Safe Redlands Assocs. v. United States*,
35 Fed. Cl. 726 (1996) ..........................................................................................................4

*UnionBanCal Corp. v. United States*,
93 Fed. Cl. 166 (2010)...........................................................................................................1

*Whitney Benefits, Inc. v. U. S.*,
    18 Cl. Ct. 394 (1989) .........................................................................................................9

**INTRODUCTION**

Pursuant to the inherent authority of the United States Court of Federal Claims, Plaintiff United Affiliates Corporation ("United") and Plaintiff Mingo Logan Coal LLC ("Mingo Logan") hereby move this Court to stay any and all deadlines for additional briefing of the United States' Motion for Summary Judgment (Dkt. No. 190) and to hold such Motion in abeyance until the conclusion of expert discovery. Such an order is appropriate and necessary for the orderly and efficient litigation of the merits of the issues presented here. At a post fact-discovery conference on April 21, 2026 (the "Discovery Conference"), Plaintiffs argued before this Court why the United States' summary judgment motion was premature due to the need for expert testimony on issues of fact and the material disputes of fact. At the request of the Court at the Discovery Conference, Plaintiffs and the United States have conferred regarding Plaintiffs' response to the United States' pending motion for summary judgment. The Parties could not come to an agreement on a path forward but intend to file a joint status report by May 18, 2026, in accordance with the Court's Order on May 4, 2026. Dkt. No. 197.

## I.     LEGAL STANDARD

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Groves v. McDonough*, 34 F.4th 1074, 1079 (Fed. Cir. 2022). In determining whether to grant a motion to stay, "a court must exercise its judgment by considering the most orderly course of justice and the interests of the parties, weighing any competing interests." *UnionBanCal Corp. v. United States*, 93 Fed. Cl. 166, 167 (2010) (citing *Landis*, 299 U.S. at 255). Moreover, "[t]he orderly course of justice and judicial economy is served when granting a stay simplifies the 'issues, proof, and questions of law which could be expected to result from a stay.'" *UnionBanCal*, 93 Fed. Cl. at 167 (citing *CMAX, Inc. v.*

1

*Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); *Extreme Coatings, Inc. v. United States*, No. 11-895C, 2012 WL 4747248, at *4 (Fed. Cl. Oct. 3, 2012).

Because the court has discretion in determining "[w]hen and how to stay proceedings," *Cherokee Nation of Oklahoma v. U.S.*, the court has an inherent power to hold the United States' Motion in abeyance.  124 F.3d 1413, 1416 (1997).  Holding a motion in abeyance is especially proper when further discovery is warranted.  *See Lippmann v. United States*, 127 Fed. Cl. 238, 252 (2016) (holding the parties' cross-motions for summary judgment in abeyance because a more complete factual record was needed); *see also Didley v. United States*, 173 Fed. Cl. 170, 172 (2024) (holding the United States' motion to dismiss in abeyance until further discovery occurred).  As shown during the Discovery Conference and herein, further discovery–specifically, expert discovery–is both relevant to, and essential for, Plaintiffs' opposition to the United States' summary judgment motion.  *See Baron Services, Inc. v. Media Weather Innovations, LLC*, 717 F.3d 907, 913-14 (Fed. Cir. 2013) (holding the district court prematurely granted summary judgment because Plaintiff was unable to depose two witnesses, thereby preventing "its principal opportunity to directly challenge the veracity of the statements made in their affidavits.").  Thus, the United States' summary judgment motion should not be considered until such time as expert discovery is completed.  *See Burnside-Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574, 1582 (Fed. Cir. 1993) ("[S]ummary judgment should 'be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'") (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986)).

## II.    <u>**ARGUMENT**</u>

The United States' premature summary judgment motion underscores the need for expert discovery on key issues where there are genuine disputed issues of material fact.  *See Favors v. City of Atlanta*, 849 F. App'x 813, 820 (11th Cir. 2021) ("[W]hen properly credited, as must be

2

done at the summary judgment stage, the expert opinion offered [] creates a genuine dispute of material fact."); *see also Newman v. City of Philadelphia*, 509 F. Supp. 3d 291, 298-99 (E.D. Pa. 2020) (finding that Plaintiffs' proffered expert opinion "creates a genuine issue of material fact"). Expert testimony is necessary to fully identify, develop, and respond to the complicated material facts that are disputed by the Parties, including the nature of Plaintiffs' property interests, the objective reasonableness of their investment-backed expectations, the economic impact (including why the Spruce No. 1 Mine should be the "parcel"), and the character of EPA's action (in particular, the regulatory scheme upset by EPA's action). *See* Exhibit A (table describing Plaintiffs' need for expert discovery, including a non-exhaustive list of material disputes of fact implicated in the United States' Motion for Summary Judgment).

Obligating Plaintiffs to respond to the summary judgment motion at this stage will require Plaintiffs to brief (in even more detail than is explained here) the need for expert discovery while unfairly and prematurely revealing their expert theories prior to expert discovery. This would be plainly prejudicial to Plaintiffs. It will also require the Court and Plaintiffs to spend a significant amount of time sorting through issues with an incomplete record while there is a high likelihood those issues will be raised a second time, after expert discovery. For those reasons, this Court should hold the United States' Motion for Summary Judgment in abeyance until the conclusion of expert discovery.

### A.     HOLDING THE UNITED STATES' SUMMARY JUDGMENT MOTION IN ABEYANCE IS AN APPROPRIATE REMEDY.

The record necessary to decide the United States' summary judgment motion will not be complete until expert discovery occurs. Where the record is incomplete, it is appropriate to hold a motion for summary judgment in abeyance. *See Lippmann*, 127 Fed. Cl. at 253. Although it is

Plaintiffs' position that Rule 56(d) is not appropriate in this case,[1] cases where Rule 56(d) has been invoked in opposition to a motion for summary judgment lend further support to the appropriateness of an abeyance when the record is incomplete. *See Baron Services, Inc.*, 717 F.3d at 913-14 (holding that it was improper for the lower court to refuse a party's request to delay ruling on the summary judgment motion until after expert review of evidence and deposition of certain witnesses); *see also Metropolitan Life Insurance Co. v. Bancorp Services, LLC*, 527 F.3d 1330, 1339 (Fed. Cir. 2008) (finding the district court erred in part by denying a Rule 56(f) [now Rule 56(d)] motion). Holding the United States' Motion for Summary Judgment in abeyance based on this Motion to Stay achieves the same end without risking prejudice to Plaintiffs.

**B.    EXPERT DISCOVERY IS NECESSARY TO RESOLVE THE ISSUES IN THIS CASE.**

Plaintiffs have identified crucial issues that are appropriate for expert discovery. Any attempt to resolve such issues at this time would be without the benefit of the full development of the record.

**1.    <u>SUMMARY JUDGMENT IN A TAKINGS CASE IS PREMATURE PRIOR TO EXPERT DISCOVERY.</u>**

Plaintiffs have identified numerous core and materially consequential issues raised by the United States that require expert testimony. *See* Ex. A. This Court has recognized that expert testimony is often required before summary judgment in a takings case. *See Store Safe Redlands Assocs. v. United States*, 35 Fed. Cl. 726, 736-37 (1996) (denying a summary judgment motion due to fact-intensive questions and requiring expert testimony on Plaintiff's property rights); *see*

---

[1] Plaintiffs do not believe the filing of Rule 56(d) affidavits/declarations is proper because the Rule contemplates a scenario when additional fact discovery is needed from the opposing party; it does not address situations where the party needs to provide their own discovery through expert reports. *See* Exhibit C, Discovery Conference Transcript at 47:19-48:3. Rule 56(d) is an inadequate substitute for an abeyance and would likely reveal more of Plaintiffs' expert theories.

*also Anaheim Gardens v. United States*, 178 Fed. Cl. 155, 186 (2025) (noting the importance of expert testimony in resolving alleged economic impact).  The United States did not cite any cases where summary judgment was granted prior to expert discovery.

### 2.    EXPERT DISCOVERY IS NECESSARY FOR MANY ISSUES RAISED BY THE UNITED STATES IN ITS SUMMARY JUDGMENT MOTION.

The nature of Plaintiffs' property interests and the application of each *Penn Central* factor is critical to this case.[2]  *See* Ex. A-B.  The Court should allow the Parties to fully develop the record prior to deciding these crucial issues.

### (a)    Property Interest

Expert testimony is necessary to fully develop the record as to Plaintiffs' property rights. It is Plaintiffs' position that United had the requisite property interest on the portion of the Spruce No. 1 Mine that was subject to a 1951 deed to Kelly Hatfield.  The 1951 deed reserved to Boone County Coal Corporation (a predecessor owner of the property) the ownership of certain coal seams with appurtenant surface rights that included the right to strip mine.  That is sufficient to permit both strip mining *and* other surface mining under West Virginia law.  *See McElroy Coal Company v. Schoene*, 240 W. Va. 475, 483-86 (2018) (detailing the parties' contemplation on the impact of mining which drives the analysis for what type of mining may be conducted under a particular deed—not the actual mining technology).  However, the United States argues that United lacked the requisite property interest on the portion of the Spruce No. 1 Mine that was subject to a 1951 deed to Kelly Hatfield.  Mot. for Summary Judgment at 45-51.  Expert testimony on what type of mining and activities would have been contemplated by the parties to the deed in 1951,

---

[2] For simplicity, Plaintiffs categorize the issues in this Motion into specific factors under a takings claim to explain why expert discovery is necessary; however, many of the issues overlap and impact multiple categories.

including how strip mining would have been interpreted, is necessary to show what surface rights United had when it acquired the property in 1979 (and demonstrate there are material facts in dispute). *See Phillips v. Fox*, 193 W.Va. 657, 662 (1995) ("[A]mbiguities in a deed are to be clarified by resort to the intention of the parties ascertained from the deed itself, the circumstances surrounding its execution, as well as the subject matter and the parties' situation at that time.").

Likewise, United possessed the appurtenant surface rights to the "two surface tracts on the Pigeonroost Stream" to conduct mining operations. Mot. for Summary Judgment at 51-53. Expert testimony is necessary to explain whether the types of mining activities (including surface impacts) could have been contemplated by the parties to the 1902 deed that severed the mineral rights for these tracts.

The United States argues that it has not taken Mingo Logan's sublease to the property, analogizing Mingo Logan's leasehold interest to a contractual interest. Mot. for Summary Judgment at 59-60. But Mingo Logan's interest in the Spruce No. 1 Mine is a real property interest. *See Appolo Fuels, Inc. v. United States*, 54 Fed. Cl. 717, 724 (2002) (recognizing mining leasehold as property interest). Expert testimony will substantiate that real property interest and demonstrate how the United States' action sapped it of value.

In sum, Plaintiffs anticipate having an expert address issues surrounding Plaintiffs' property interests, including:

- The mining practices and ancillary activities contemplated in relevant deeds;
- The types of mining generally contemplated when the surface and mineral rights were severed; and
- The value of Plaintiffs' real property interests prior to the United States' action.

**(b)        Reasonable Investment-Backed Expectations**

Assessment of a person's reasonable investment-backed expectation has a subjective and objective component.  The objective component can be established through expert testimony.  *See Appolo Fuels v. United States*, 381 F.3d 1338, 1349 (Fed. Cir. 2004) (noting a three-factor test for objective reasonableness, including whether the possibility of the challenged regulation could have been reasonably anticipated in light of the regulatory environment at the time of purchase); *see also Cienega Gardens v. United States*, 503 F.3d 1266, 1290 (2007) (describing competing expert testimony as to objective reasonableness of investors' expectations).  It is United's position that its expectation that it would have been able to obtain all necessary environmental permits to mine the property was objectively reasonable in 1979.[3]  The United States argues that United had no reasonable investment-backed expectations, in part due to the regulatory schemes in place at the time United acquired the area that became the Spruce No. 1 Mine.  Mot. for Summary Judgment at 33-38.

The question of the objective reasonableness of United's investment-backed expectations is appropriately subject to expert testimony regarding an experienced mining company's expectations that it could obtain all necessary environmental permits in 1979 and that it would not be subject to more stringent regulation.  *See Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1275-76 (Fed. Cir. 2009) (explaining how "although the poultry industry in general is highly regulated," Plaintiffs were not on notice for agency action "grounded in new scientific understanding"); *see also Cienega Gardens*, 503 F.3d at 1288  (determining whether "it would be expected that the law might change"); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327,

---

[3] The United States defines the date of acquisition as 1977, Mot. for Summary Judgment at 33, but United did not obtain the complete property rights that were later leased to Ashland Coal via the 1992 lease until 1979.

7

1357 (Fed. Cir. 2001).  The Court would be deprived of critical evidence in the absence of this testimony.

As for Mingo Logan, expert testimony will establish how coal companies typically structure their operations—including through the use of subsidiaries and affiliates—and demonstrate how Mingo Logan invested in the Spruce No. 1 Mine.  In particular, expert testimony will support the objective reasonableness of Mingo Logan's expectation that it would obtain permits for mining.  *See Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979).

Plaintiffs anticipate having an expert address issues surrounding Plaintiffs' reasonable investment-backed expectations, including:

- The regulatory landscape at the time United acquired the property in 1979;

- The objective reasonableness for owners and operators of coal mines in West Virgina in 1979 to expect that any permits necessary to mine their coal could and would be obtained;

- The objective reasonableness for owners and operators of coal mines in West Virginia in 1979 to foresee a permit revocation based on changes in science (*see* Ex. A-B);

- The management structure of mining operations like the one at the Spruce No. 1 Mine; and

- The objective reasonableness of Mingo Logan's expectation that it would obtain permits for mining.

### (c)    Character of the Government Action

Plaintiffs are entitled to develop and introduce expert testimony as to the typical regulatory process surface mines in West Virginia experienced in the years before and after 2009.  The United States argues that the character of EPA's action was to prevent environmental harm.  Mot. for Summary Judgment at 68-71.  Plaintiffs argue that the scientific character of EPA's action was pretextual and secondary to non-scientific reasons driving EPA's change in position on coal

mining.  Moreover, Plaintiffs were singled out by EPA due to the size and publicity surrounding the Spruce No. 1 Mine.  Expert testimony on the regulatory process for surface mines in West Virginia in the years before and after 2009 is appropriate to fully evaluate the character of EPA's 404(c) action because it will help explain the extraordinary nature of EPA's action.

Plaintiffs anticipate having an expert address issues surrounding the character of the government's action, specifically the regulatory landscape and state of coal mining at the time of EPA's 404(c) action.  *See* Ex. A-B.

### (d)    Economic Impact

A key aspect of assessing the economic impact is determining the "parcel" for purposes of assessing the pre- and post-takings value.  The "parcel" is also essential to assessing the Parties' property interests and reasonable investment-backed expectations.  The United States claims— without citing to the most relevant case law from the Supreme Court of the United States—that the "parcel" for purposes of the takings is the "Dal-Tex area."  Mot. for Summary Judgment at 30-32.  Plaintiffs' position is that expert testimony is appropriate and necessary to demonstrate that the "parcel" is the area of the Spruce No. 1 Mine.

Plaintiffs have retained an expert to address issues surrounding Plaintiffs' economic impact of EPA's 404(c) action, including the parcel and the diminution in value of the property,[4]  by:

- Analyzing the relevant factors under *Murr v. Wisconsin*, 582 U.S. 383 (2017), such as the physical characteristics of the property and the prospective value of the regulated land, as

---

[4] The United States claims the appropriate standard for determining economic impact is whether the landowner was able to recoup its investment, Mot. for Summary Judgment at 38-40, but this is incorrect.  *See Cane Tennessee, Inc. v. United States*, 62 Fed. Cl. 703, 708-09 (2004) (citing *Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 497 (1987)) ("[T]he determination of whether a regulatory taking has occurred requires a comparison of the value that has been taken from property with the value that remains in the property."); *see generally* Ex. A. The ability to recoup investment is no more than a consideration.

well as considerations set forth in other applicable case law to identify the "parcel" for Plaintiffs' takings claim.  *See* Ex. A-B.

- Comparing the value of the Spruce No. 1 Mine immediately before and after EPA's action. *See Whitney Benefits, Inc. v. U. S.*, 18 Cl. Ct. 394, 408-09 (1989); *see also Cienega Gardens*, 503 F.3d at 1282 (Fed. Cir. 2007); and

- Explaining how EPA's action prevented the extraction of the vast majority of the surface coal reserves by economically feasible and viable means.

### C.    PLAINTIFFS WOULD BE PREJUDICED IF REQUIRED TO FILE OPPOSITION BRIEFING PRIOR TO EXPERT DISCOVERY.

As discussed above, Plaintiffs will suffer prejudice if they are unable to further develop the record in this case through expert discovery.  At the Discovery Conference, the United States advanced three arguments for why it would be prejudiced if Plaintiffs were not required to file opposition briefing.  Ex. C at 39:19-40:25.  When weighing the relative prejudice to each party, the United States' arguments are unpersuasive.

 First, the Court's decision on this motion will not alter the fact that the United States made the calculated strategic judgment to reveal its arguments and theories of the case by filing its summary judgment motion before the conclusion of expert discovery.  *Id.* at 40:2-10.  Plaintiffs warned the United States prior to its filing that they did not believe summary judgment was appropriate until after expert discovery.  The Court also warned the United States of the risks of filing a summary judgment motion before the Discovery Conference.  Dkt. No. 188 at 2.  Yet, the United States still filed the instant summary judgment motion.  In the face of these warnings, the United States' claim of prejudice is both contrived and self-inflicted.

Second, the United States' claim of prejudice by potentially avoiding the expenditure of resources by filing the summary judgment motion at this stage is an argument that rings hollow.

10

Ex. C at 39:19-40:1. The United States obviously expended significant attorney resources putting together a 75-page brief with 100 exhibits with the knowledge of the risk that the Court may not consider the motion prior to the conclusion of discovery. Requiring the United States to undertake expert discovery (which it apparently does not believe is necessary to decide most issues) prior to further briefing on its motion requires it to expend some additional resources, but it prevents prejudicing Plaintiffs' claims for just compensation under the Fifth Amendment. Moreover, it is not as if the United States will be caught flat-footed. To the contrary, the United States has assumed, it seems, that expert discovery will be needed to resolve this case. Counsel for the United States and its large team of experts have made two site visits to the Spruce No. 1 Mine site– including one about two months before it filed its summary judgment motion. *See* Exhibit B, Declaration of Kevin P. Holewinski. Lastly, the United States claims it will be prejudiced in expert discovery if the "parcel" has not been resolved. But, as the Court noted, it is Plaintiffs' burden to demonstrate the economic impact and thus demonstrate and persuade this Court what is the relevant parcel. Ex. C at 41:1-9. The United States is not obligated to argue that the parcel is the Dal-Tex property or to advance only one theory. The claimed prejudice simply does not hold up.

While the claimed prejudice to the United States would be minimal, Plaintiffs would face significant prejudice given the interconnected nature of the "parcel," which bears on the alleged property interest and multiple *Penn Central* factors. This weighs in favor of holding the United States' motion in abeyance.

**D.    BRIEFING AND DECIDING THE UNITED STATES' SUMMARY JUDGMENT MOTION WOULD RESULT IN UNNECESSARY TIME AND EXPENSE.**

If Plaintiffs are now required to respond to the United States' Motion for Summary Judgment and the Court is obligated to consider such briefing, both the Plaintiffs and the Court will incur unnecessary time and expense as a second round of summary judgment motions is likely

11

after the conclusion of expert discovery (thus duplicating the issues before the Court). *See Cf. Braswell v. United States*, 155 Fed. Cl. 148, 150 (2021) (avoiding duplication of issues serves the cause of judicial economy and conserves litigants' resources). By holding the United States' Motion for Summary Judgment in abeyance, it would limit the Court's consideration to one set of summary judgment briefing—saving Court and party resources and avoiding complicating issues further.

### III.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court stay the briefing on the United States' summary judgment motion and hold it in abeyance until the conclusion of expert discovery.

Dated: May 14, 2026

  /s/ *Kevin Holewinski*

Kevin P. Holewinski
Daniella A. Einik
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
T: (202) 879-3939
T: (202) 626-1700
E: kpholewinski@jonesday.com

*Attorneys for United Affiliates Corp.*

  /s/ *George P. Sibley III*

George P. Sibley III
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, Virginia 23219
T: (804) 788-8262
E: gsibley@hunton.com

*Attorneys for Mingo Logan Coal LLC*

12

## <u>CERTIFICATE OF COMPLIANCE WITH RCFC 7.3</u>

We hereby certify that Plaintiffs have conferred with Defendant's counsel concerning the subject matter of Plaintiffs Motion to Stay.  Defendant opposes the relief sought in the Motion.

Dated: May 14, 2026                                Respectfully,

/s/ *Kevin P. Holewinski*

Kevin P. Holewinski
*Attorney for United Affiliates Corp*

/s/ *George Sibley III*

George P. Sibley. III
*Attorney for Mingo Logan Coal LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2026, a copy of the foregoing Plaintiffs' Renewed Motion For A Stay was filed electronically and was served on counsel of record through the Court's electronic case filing/case management (ECF/CM) system.

/s/ *Kevin P. Holewinski*

Kevin P. Holewinski

*Attorney for United Affiliates Corp.*